1  Ronald A. Newcomb, Pro se
   5514 Waring Rd
2  San Diego, CA 92120-1952
   Telephone (619) 501-1800

3

4                                                    FILED

5                                        2009 JUN 30 PM 3: 04

6                                        SOUTHERN DISTRICT OF CALIFORNIA

7                                        BY: _____ DEPUTY

8              **UNITED STATES DISTRICT COURT**
        **FOR THE SOURTHEN DISTRICT of CALIFORNIA**
9
   Plaintiff,                    )  Case No.:
10 Ronald A. Newcomb, as Minority Member of )
   Aqua Genesis Ltd.(NV), and as majority  )  Complaint for:  **08 CV 1161 H POR**
11 member of World Wide Assets LLC (DE), and )
   Autek LLC.(CA) owned by World Wide Assets )    (1) **Tortuous Interference**
12 LLC, together,                 )    (2) **Oppressive Management of a Majority**
                                  )        **Member to the detriment of minority**
13                v.              )        **members and risking the**
                                  )        **intellectual property of Aqua**
14 Defendants                     )        **Genesis**
   Douglas Firestone, as an individual, and )    (3) **Fraud**
15 as controlling Majority Member and COO of )    (4) **Conspiracy to Defraud**
   Aqua Genesis Ltd. (NV), Candice(Lowery) )    (5) **Copyright Infringement**
16 Firestone, and Dennis Lowery, together, )    (6) **Conversion**
   the "Defendants"               )    (7) **Attempted Intellectual Property**
17                                         **Theft by Unlawful Bankruptcy**
                                          (8) **Injunctive Relief**
18                                         (9) **Declaratory Relief**
                                          (10) **Temporary Restraining Order**

19 COMES NOW Plaintiff RONALD A. NEWCOMB Pro se, who for himself and others alleges as

20 follows:

21                        **Jurisdiction and Venue**

22 This complaint involves parties with residences in California and Nevada, torts which

23 may have been committed in California and Nevada, and companies in California, Nevada,

24 and Delaware, and the amount of damaged claimed exceeds $1,000,000.

25 Plaintiff complains that Defendants, Does 1 through 17 based on personal knowledge and

26 on information and belief as to the acts of others:

27 **I. General Allegations**

28     1)  This case is about oppressive control by the Douglas Firestone, the Chairman,

29         COO and Majority Member of Aqua Genesis LLC (Nevada)("AG"), which has resulted

30         in intentional misrepresentations and reckless false statements against the

31         interests of Plaintiff, risking Intellectual Property ("IP") belonging to the

32         minority members of AG, including Ronald A. Newcomb, attempted theft of that

                        COMPLAINT - 1

1  Intellectual Property by the Defendants, fraud and liable against Plaintiff
2  which risks the property of the Plaintiff and the other minority members in AG,
3  rights to that property claimed by AG and tortuous interference in the business
4  interests of Plaintiff by the Defendants. The entire IP of AG is held as a
5  Trade Secret for the specific design of a geothermal desalination device and is
6  the actual design created at and by Autek LLC (California) ("Autek"), and Mr.
7  Newcomb, at Mr. Firestone's request, but never paid for, as Defendants well
8  know. Unpaid designs belong to the designer, in this case Autek, as the
9  defendants well know, ergo, his claim to a Trade Secret is false as the
10  disputed designs are copy rights of Autek. Additionally his refusal to set up
11  an entity in April of 2003 (the time of the creating of the drawings), to hold
12  the rights to the device he claims to be his IP proves that only one entity
13  could possibly own those trade secrets, Autek where those designs were first
14  created, reduced to electronic drawings, and printed with the company name
15  Autek on them.

16  2) Mr. Firestone's insistence on starting business but refusal to pay for the
17  creation of an entity to house the IP and business plan as a creative work
18  caused Plaintiff to write the first business plan concerning commercialization
19  of the geothermal desalination device for a company (now closed) named Global
20  Trade Services (DE) ("GTS") owned also by World Wide Assets LLC (DE) ("WWA").
21  The cover of that business plan contains the phrases "Copyright, 2003 by GTS
22  LLC" and also "Aqua Genesis Ltd. A subsidiary of Global Trade Services LLC."
23  His wife, defendant Mrs. Candice L. (Lowery) Firestone determined the business
24  name "Aqua Genesis" but again, Mr. Firestone would not pay for its creation so
25  this technique of a yet to be registered partnership was used and housed in
26  GTS. In the continuing pattern of behavior, Mr. Firestone never compensated GTS
27  for that creative work. (On the wrapping up of GTS in 2005, that copyrighted
28  material reverted ownership to World Wide Assets LLC.)

29  3) Autek was a military contracting firm compliant with military quality standards
30  and wrote, at the request of Mr. Firestone, a quality control manual for AG.
31  Again, this work was never paid for, showing a continuing pattern of behavior
32

COMPLAINT - 2

1    of requesting work, then never paying for that work, but then claiming

2    ownership rights.

3  4) The unique and most valuable of the Trade Secrets claimed by AG is the

4    evaporator design found on those first drawings in April 2003 by Autek. Autek's

5    copyright is continually being violated by Defendants.

6  5) After creating the original Engineering Drawing Package for Autek LLC in April

7    of 2003, embodied by Mr. Newcomb and Mr. Firestone in May of 2004, and moved to

8    SDSU for testing May 20th 2004, and which drawings bear the Autek name created

9    at the request of Mr. Firestone but never paid for by Mr. Firestone, Mr.

10   Firestone requested, after AG was formed on June 10, 2004, that Plaintiff to

11   destroy said drawings on several occasions to extinguish this historic evidence

12   of the copyright in a blatant act of conversion.

13 6) During this time and after, Mr. Firestone concealed from Plaintiff that one

14   Peter Blair (not a party to this action) had originally asked for a design from

15   John Petric, (a minority member in AG) for a unit which could use geothermal

16   water as process water in an evaporation/condensation desalination company that

17   Firestone became involved with about 1997 and up until the year 2003. Plaintiff

18   found out about Mr. Blair when he visited the SDSU test site in 2004 and Mr.

19   Firestone later divulged part of the story. Other parts were told to Plaintiff

20   by Mr. Bob Trent (a minority member of AG). Previously, when discussing an

21   equitable division of interest in AG, Mr. Firestone's lack of forthrightness

22   about these issues caused him to have a larger and controlling share in the

23   Membership of AG since all concepts were claimed by him be his own. Even then

24   he complained at Newcomb's insistence that Petric and Williams be given equity

25   for their role in the previous designs. This started a pattern of behavior

26   clearly revealing that he wanted all equity and interest in the technology,

27   which he again attempts through conversion and bankruptcy (see below).

28 7) Mr. Firestone used the Firestone family trusts to fund the development of the

29   prototypes with the aid and assistance of Newcomb. (This is evidenced by the

30   KUSI Rod Luck interview with Aqua Genesis at SDSU in 2005.) Mr. and Mrs.

31   Firestone are known to take money as needed from the Firestone Trust as Mr.

32   Firestone is the Trustee of said Trust. With the agreement and signature of Mr.

1   Firestone, AG hired the law firm of Fish & Richardson to do work for the
2   company and then Mr. Firestone refused to pay the $31,127.92 due when they
3   demanded payment (5/9/2007) though he did use those funds to pay other bills of
4   that firm (December 15, 2006) and other expenses of AG. He prevailed on Newcomb
5   as CEO to refuse such payment claiming that he received no perceived benefit
6   from their work even though his signature is on the LLC Agreement that firm
7   created for AG and which is the true and legitimate Agreement to this day. He
8   informed Plaintiff as CEO of AG that he, as Majority Member of the LLC was
9   considering closing AG to avoid paying those legal fees. Plaintiff strongly
10  objected to this tactic stating that, first it was wrong, AG ought to pay that
11  bill when it can, and second that closing action would cause the intellectual
12  property to become public domain, or at lease owned by all six members of AG as
13  their private property, and Mr. Firestone did not go through with his scheme.
14  This pattern of not paying for things he requests puts the IP rights of all of
15  the minority owners at risk, of which Plaintiff owns fully 30%, the largest
16  owner beside Firestone who owns 56% membership rights (14 percent membership
17  rights belong to the four other people).

18  8) Mrs. Candice L.(Lowery) Firestone often interjected ideas on Mr. Firestone in
19  the presence of Newcomb during the development period (including the naming of
20  the company as stated above) and, on numerous occasions interfered with the
21  company management directly interjecting her ideas on her husband and insisting
22  he do things her way. Allowing management by persons outside the company has
23  also developed into a pattern of behavior as we will show in trial but is also
24  evidenced by Mr. Firestone's brother-in-law's activities on behalf of AG. The
25  first prototype designed by Autek LLC and whose drawings were used to order
26  work on components, was physically embodied at 9182 Tonya Lane, Santee, CA
27  92071, the house purchased, according to Mr. Firestone, by Candice Firestone
28  before they were married and still owned by her. The unit was physically
29  constructed by Mr. Firestone and Mr. Newcomb. We will attempt to prove, during
30  the course of the trial, that Mrs. Firestone repeatedly interfered with the
31  management of Aqua Genesis at that very location and this interference was
32  wrongfully allowed by Mr. Firestone as Majority Member, Chairman of the Board

1   of Directors, and COO, and that wrongful interference later escalated to

2   conspiracy to commit fraud and tortuous interference against Plaintiff.

3   9) Plaintiff worked with Firestone to theorize prototypes, create, improve, and

4   test the devices created by hand by Mr. Firestone and Mr. Newcomb and tested at

5   San Diego State University through the contacts of Mr. Newcomb who is an

6   Adjunct Faculty Member of the SDSU College of Sciences. The Plaintiff's duties

7   at SDSU included the collection of test data from the testing of the various

8   prototypes Plaintiff and Mr. Firestone created and installed at SDSU with funds

9   from the Firestone Trust an interpretation of that data for the continual

10  improvement of the designs. As Adj. Professor, Mr. Newcomb's time was not

11  compensated by Mr. Firestone by agreement with SDSU. As Mr. Firestone well knew

12  at the time, the drawing package remained the property of Autek because of his

13  lack of compensation for the work he requested and which was performed by Autek

14  at its own expense. Defendant continues use of those designs, specifically the

15  one and only evaporator section of the device, is a Copyright Infringement and

16  Plaintiff is therefore entitled to injunctive relief. As the design slowly

17  evolved in prototypes (but the unique evaporator design of Autek remained

18  unchanged) Mr. Firestone refused the repeated suggestions for improvement of

19  the desalination unit Adj. Professor Newcomb as Principal Investigator of ICATS

20  (the International Consortium of Advanced Technologies and Security, College of

21  Sciences, SDSU) and based on his review of the test data and based on his

22  understanding of thermodynamics. Mr. Firestone steadfastly refused any attempt

23  to improve the design any further, the Trade Secret agreement of the company

24  remained unchanged. He well knew these ideas and designs of Plaintiff and

25  verbally agreed that they were not the design of AG, because the only IP of AG

26  remained at the time, and to this day, the specific previous design signed over

27  to AG held only as a Trade Secret, and that wrongly so as this violates Autek's

28  copyright. His tortuous interference is also fraud because of these facts as

29  his claimed IP, a trade secret is copyrighted by Autek. There are three

30  definitions of trade secret that stand out as the most often cited and

31  recognized by the courts.

32

1. "A trade secret may consist of any formula, pattern, device or compilation of information which is used in one's business, and which gives him an opportunity to obtain an advantage over competitors who do not know or use it."  Restatement of Torts § 757, comment b (1939).

2. A trade secret is "information, including a formula, pattern, compilation, program, device, method, technique, or process, that: (i) derives independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable by proper means by, other persons who can obtain economic value from its disclosure or use, and (ii) is the subject of efforts that are reasonable under the circumstances to maintain its secrecy."  Uniform Trade Secrets Act ("UTSA").

3. "A trade secret is any information that can be used in the operation of a business or other enterprise and that is sufficiently valuable and secret to afford an actual or potential economic advantage over others." Restatement (Third) of Unfair Competition § 39 (1995).

10) On August 14, 2007 Mr. Firestone drafted a letter terminating the employment as CEO of AG to Mr. Newcomb without pay or compensation for five years of work. In subsequent letter e-mailed between them, the Plaintiff complained that letters didn't seem to be expressed in the voice of Mr. Firestone (August 22, 2007) and asked who was writing these false and deceptive notes which Firestone well knew contained false information. It was later that the Plaintiff learned of the involvement of Mr. Lowery, the brother of Mrs. Firestone. Plaintiff subsequently asked Mr. Firestone if he intended on honoring existing contracts with WWA and others for use of the desalination device which he well understood was critical to certain development plans of WWA, and AG Channel Partners and other contracts of the company. He answered that query by stating "I will consider it." These events and the uncertainty it caused forced Mr. Newcomb, after August 16th 2007 to continue to examine the data he collected at SDSU and

1     design a unit with higher efficiency than those the ideas discussed by

2     Plaintiff and Firestone at SDSU, but of differing design. This was necessary to

3     fulfill the fiduciary responsibilities Mr. Newcomb has with and to others

4     seeing the uncertain and destabilized relationships at AG and Mr. Firestone's

5     refusal to answer questions concerning honoring existing contracts.

6   11) Mr. Newcomb pointed out to Mr. Firestone the risks of being a sole decision

7     maker of the company under the legal theory of alter ego. Mr. Firestone replied

8     that Newcomb had no knowledge that he was the sole decision maker, which

9     directly implies other people were making decisions for AG at that critical

10    time. Mr. Newcomb pointed out that bringing in another Director or Officer

11    required his vote and none was taken, ergo, either he was the sole decision

12    maker, or he was allowing other people who had no actual authority to make

13    decisions which is malfeasance. This also risks the rights of the minority

14    members of AG by oppressive and wrongful management practices.

15   12) The Plaintiff, as stated, is an Adjunct Faculty Member at SDSU College of

16    Sciences and, as such, has a website at the University. During the testing of

17    the various prototype units and modifications of those prototypes, and with

18    full knowledge of Mr. Firestone, Plaintiff took many photographs of the various

19    prototypes which, in his duties as CEO of Aqua Genesis, Plaintiff posted on the

20    company internet website, e-mailed to interested parties, as did Mr. Firestone,

21    and otherwise used in presentations to persons interested in what the company

22    was doing. The photos are copyrighted by the photographer, the Plaintiff, were

23    taken at a public university, reveal no proprietary information as is well

24    known by Defendants, and one such photo was posted on the Plaintiff's SDSU web

25    site. Yet, with full knowledge of these events, Mr. Lowery, under false claim

26    of authority of AG, with full collusion of Mr. Firestone and encouragement by

27    Lowery's sister, Mrs. Candice Firestone, wrote a letter to Technology Transfer

28    Office at SDSU stating all photos of the device revealed proprietary

29    information and demanded removal from the website. This was, as they well know,

30    fraud and libelous. The knowingly false and malicious claim that intellectual

31    property, known by Defendants to be confined inside of a stainless steel box,

32    harmed the reputation and functions of Mr. Newcomb as Adj. Professor at SDSU

1   and is libelous. This action caused the website to be blocked by the College of

2   Sciences Dean to the detriment of the Plaintiff and caused both Plaintiff and

3   the University many man hours to get back on line. Complaints came to Plaintiff

4   through financial contacts in the Mid West that the website for this and other

5   projects were off line and that Hedge Fund Managers and other people of high

6   financial means were attempting to access that site for information both about

7   a patent owned by Mr. Newcomb which can be a solution to the Salmon crisis in

8   the Pacific Northwest (not involved in this suit). Said libelous, tortuous

9   interference by Defendants has damaged Plaintiff's business interests as well

10  as his reputation at SDSU with all parties involved or who heard about the

11  incident and with the Hedge Fund Managers attempting to examine the SDSU

12  website. These acts constitute conspiracy to defraud the California State

13  University.

14  13) As Principal Investigator ("PI") of the International Consortium of Advanced

15  Technologies and Security ("ICATS"), Adj. Professor Newcomb was required to

16  notify Mr. Firestone (Aug. 21, 2007) that he was to remove his property from the

17  campus of SDSU since all testing has stopped and there was no other plan

18  forthcoming by AG to use the device known to the PI. Mr. Firestone indeed

19  complied and when Plaintiff knew he was present at SDSU, on August 22, 2007

20  Plaintiff delivered to Mr. Firestone the company paper documents he had

21  possession of. Mr. Lowery was present, and this was the first time Plaintiff

22  had ever seen Mr. Lowery. Plaintiff requested that Mr. Firestone set up a

23  secured Microsoft Groove account, as was the custom of AG officers (several had

24  previously been used by Plaintiff and Mr. Firestone) to upload all the

25  electronic files of the company to Mr. Firestone as he was now in sole control

26  of the company by his own efforts and oppressive actions. Mr. Firestone refused

27  repeatedly, over the next few weeks, to do so even though he knew there were

28  legal files on record that he needed to effectively manage the company. Mr.

29  Newcomb pointed out that to refuse these electronic documents, too many to load

30  onto available media for transfer, was gross negligence. Mr. Firestone stated

31  in a letter dated "aug 20 2007" (sic): "A claim of gross negligence for failure

32  to answer your request is inflammatory." This is not in his voice and is

believed to be written by Dennis Lowery. This incorrect usage of some pronouns
in that document indicates Lowery typed the response and Firestone copied it
into his document. Mr. Firestone never did accept those electronic documents of
AG. Mr. Firestone further shows his negligence by not updating the information
with the U.S. Patent and Trade Mark office and Plaintiff continues to receive
correspondence from them concerning the AG Trade Mark. This is a significant
legal risk to the minority rights of the members of AG, managerial malfeasance
and negligence. Mr. Firestone complained at Plaintiffs characterization of his
actions and seemed more concerned with what Plaintiff called his actions than
the legal ramifications of those actions. The same day as the paper files were
transferred, Plaintiff was informed by Associate Professor Eric Frost (a
minority member in AG) that Mr. Lowery approached Professor Frost to ask if
Defendants could leave the prototype unit on the property of SDSU and he was
told that the desalination project was the Plaintiff's project at the
University and they must comply with the requests of Plaintiff as P.I. and
Director of Operations of ICATS. This is when Plaintiff discovered that Mr.
Lowery was involved with and an acting agent of and for AG. This is strong
indication of collusion in these matters and those to come by Mr. Lowery and
his sister, Mrs. Firestone. Additionally, as P.I. of ICATS Plaintiff had
negotiated a contract with CalEnergy to test a geothermal desalination device
at their Salton Sea Plants 1 and 2. That opportunity for AG ended as well,
further impacting the rights of the minority members of AG by the malfeasance
of Mr. Firestone's oppressive management style as Majority Member and sole
decision maker.

14) On November 21, 2007, the Plaintiff received a letter from attorney's Callihan,
Little & Sullivan notifying the Plaintiff that he was not entitled to use the
Intellectual Property of AG as well as other accusations and demands and made
claims about Plaintiff's fiduciary responsibilities as the CEO of AG. The
letter demanded that Plaintiff "cease and desist using this information and
immediately remove and information derived from Agua Genesis (sic) on all
websites maintained or controlled by Strident, Ltd., World Wide Assets, LLC or
yourself individually." The Plaintiff responded to that letter by letter dated

1   November 21, 2007 stating that he has not and would not divulge the Trade

2   Secrets of Aqua Genesis to anyone nor does he want or need to in order to be

3   competitive in the same field, and that no employment agreement had been

4   entered into nor could it be enforced without just compensation which was never

5   received. Mr. Firestone well knew Mr. Newcomb had concepts for designs of his

6   own which he developed only after his termination of August 14, 2007 (date of

7   the letter of unlawful termination). Those designs, modified and later licensed

8   to WWA, are known by no other person to this date as they exist only in his

9   mind and on his computer and have never been printed or shared with others. But

10  Mr. Firestone well knows he never paid for the original drawings he requested

11  by and completed by Autek, a subsidiary of WWA, and as Plaintiff pointed out in

12  his letter responding to Attorney Sullivan. The claims of legitimate ownership

13  by AG can be proved wrong by the very existence of drawings completed by Autek,

14  held by Plaintiff, also delivered by Plaintiff in person to Mr. Firestone when

15  Firestone visited the offices of Autek, printed and dated before the existence

16  of Aqua Genesis Ltd. (NV). These facts were pointed out in the letter of

17  response by Newcomb referred to above. This served as notice to AG of the

18  tenuous nature of its claim to any Intellectual Property, as Defendants well

19  knew at the time of the libelous, fraudulent and malicious claims of Mr.

20  Lowery.

21  15) Further, the Plaintiff learned that the defendants attempted an unlawful

22  bankruptcy of the LLC to knowingly and with malice eradicate the Intellectual

23  Property rights of the Plaintiff and the other minority members of AG (USBC

24  Dist. NV Case No. BK-S 07-17648 BAM). The case was dismissed on February 6,

25  2008 by request of the Trustee, however, the filing claimed the company has no

26  debt, and no assets. Since he has claimed multiple times that the Intellectual

27  Property is worth billions of dollars, this filing contained fraud and perjury

28  and attempted to steal the Intellectual Property rights of the minority members

29  of AG. The only reasonable conclusion as to the purpose of the filing was to

30  acquire the asset, the Intellectual Property which he is now attempting to

31  protect by his tortuous activities (see below). This filing itself was against

32  the rules of the LLC Agreement signed by Firestone September 19, 2005. This is

1    breach of fiduciary responsibility (Zahn v. Transamerica Corporation C.C.A. 3d

2    June 30, 1947 162 F. (2d) 36.) to the minority members. Firestone attempted to

3    bankrupt AG without authority of the super majority required in the LLC

4    agreement, as he well knew, and thus attempted to take possession of the IP of

5    AG knowingly and wrongly and against the best interests of the minority members

6    consisting of Ronald A. Newcomb, Eric Frost, Bob Trent, John Petric, and

7    Malcolm Williams.

8    16) On April 28, 2008 WWA had a meeting with Rear Admiral Hering at his command

9    offices at Naval Region Southwest to discuss the use of its lawful and

10    legitimate technologies to the benefit of the United States Navy. After not

11    hearing back from the Navy for several weeks, the WWA CEO, Denny Shaw, J.D.,

12    called to inquire about the proposal and was informed that Mr. Dennis Lowery,

13    had called the offices of Naval Region Southwest and intentionally interfered

14    with a prospective business relationship by making false and reckless

15    statements of fact claiming that WWA was infringing on the Intellectual

16    Property rights of AG which is intentional fraud, liable, and tortuous

17    interference with the business of Ronald A. Newcomb as the owner of WWA, the

18    very IP claimed in court documents to be of no value in his unlawful

19    bankruptcy, as Lowery well knows, and, since he cannot have been appointed as

20    an executive of AG without the vote of the Plaintiff, and that has not been

21    done, this was done under false pretense and therefore reflects on the grossly

22    negligent management practices and recklessness of Douglas Firestone as

23    Majority Member and COO of AG. The Plaintiff brings this lawsuit after

24    discovering that the defendants willfully and tortuously interfered with the

25    business of Plaintiff claiming wrongful use of AG Intellectual Property without

26    knowing what the IP of WWA is but with previous assurances that Plaintiff was

27    not using, nor wanted to use the Intellectual Property of AG in any capacity by

28    direct conversations with Mr. Firestone and through Mr. Firestone's attorney in

29    the referenced letter dated November 21, 2007. This interference caused the

30    Navy to depend on those intentional misrepresentations and is the proximate

31    cause for the failure of two to five multi-million dollar contracts, causing

32    the United States Navy rely on those false and misleading statements to

withdraw from discussions with the company. This fraud induced reliance on the false statements and the Navy acted on those false statements. The Navy stated to WWA CEO Shaw that they would not become embroiled in legal disputes. Mr. Lowery's unlawful interference in the company business is, in fact, a business tort. The prospective relationship involved desalination and electrical energy from geothermal energy at bases on San Clemente Island, North Island, the Naval Base Coronado, Naval Base Point Loma, and Naval Air Base Imperial Beach creating high volumes of water for the Navy and also for the various local communities. When done with the express knowledge of Mr. Firestone, this is negligence, it is liable and tortuous interference with the business of World Wide Assets LLC and, Mr. Newcomb, as the member of that LLC has suffered incalculable damage and loss from that interference as well as a threat to his membership rights to Aqua Genesis' IP. The damage to the good will of Ronald A. Newcomb and his company, World Wide Assets LLC was done willfully and with malice with the intent to interfere and harm the company and without regard to their reputation, liable the company's good name. The Defendants have good reason to understand they were false and intentionally misleading and are wrongfully denying Newcomb the freedom to lawfully compete in an open market. The Plaintiff is entitled to injunctive relief, and declarative relief to clear the accusations, as well as damages and punitive award as determined by the court. See (Rock Falls v. Chicago Title & Trust Co., 300 N.E.2d 331, 333 (Ill App. 1973)(citing Doremus v. Hennessy, 52 N.E. 924, 926 (Ill 1898)), see also Buckaloo, 537 P2d. at 868-69 and 871-72; Powers v. Leno, 509 N.E.2d 46, 49 (Mass.App. 1987) see also Zimmerman v Bank of America, 191 Cal. App. 2d 55, 58 (1961) see also Printing Mart Morristoen v. Sharp Electronics Corp., 563 A.2d 31, 36 (N.J. 1989; see also Chapman v. Crown Glass Corp., 557 N.E.2d 256, 262 (Ill. App. 1990); Belden Corp. v. Internorth, Inc., 413 N.E.2d 98 (Ill. Spp. 1980) see also Los Angeles Land Co. v. Brunswick Corp., 6 F.3d 1422, 1429 (9th Cir. 1993), cert. denied, 114 S. Ct. 1307 (1994); Conkle v. Jeong, 853 F. Supp. 1160, 1170 (N.D. Cal. 1994); Pacific Gas, 791 P.2d at 590 n.2; Youst v. Longp, 729 P.2d 728 n.6 (Cal. 1987); see also Shamblin v. Berge, 166 Cal. App. 3d 118, 123 (1985). RESTATEMENT (SECOND) OF TORTS §768 (1977). RESTATEMENT OF UNFAIR

COMPETITION § 1 (1993). See Wiggins v. Hitchens, 853 F. Supp. 505, 512 (D. D.C. 1994); Caller-Times Pub. Co. v. Triad Communications, 855 S.W.2d 18 (Tex App. 1993) see also American Computer, 763 F. Supp. At 650; Green Const. Co. v. Kansas Power & Light Co. 732 F. Supp. 1550 (D. Kan. 1990); Gilbane Bldg. Co. v. Nemours Found., 606 F. Supp. 995 (D. Del. 1985).

17) During the disillusion of the relationship between Firestone and Newcomb initiated by Firestone and first evidenced in a letter from Firestone, to Newcomb's surprise and shock, Newcomb noted to Firestone that the letter were not in his voice, and asked him who was writing the letters since they claimed false and misleading information known by Mr. Firestone to be false and misleading. Plaintiff claims those letters were evidence of the influence of Lowery and Mrs. (Lowery) Firestone over Douglas Firestone and evidence of collusion and conspiracy to commit fraud against the minority members of AG and later to tortuously interfere with the businesses of Ronald A. Newcomb including World Wide Assets LLC. See Chambers v. Stern, 347 Ark. 395, 64 S.W.3d 737, (2002); see also Dodson v. Allstate Ins. Co., 345 Ark. 430, 47 S.W.3d 866, (2001); see also Mason v. Funderburk, 247 Ark. 521, 446 S.W.2d 543 (1969). The requirement of showing two or more persons in this civil conspiracy we need merely to examine the known acts of Mr. Firestone and Mr. Lowery known to multiple parties. This oppressive act is only one in a pattern of behavior by Defendants to prevent an interfere with the legal business of Plaintiff. In Chambers v. Stern, supra; Dodson v. Allstate Ins. Co., supra. A recovery may be had for damages caused by acts committed pursuant to the conspiracy. A civil conspiracy is an intentional tort by multiple parties working in conjunction and which requires a specific intent to accomplish the contemplated wrong. Lowery continues to interfere with the lawful business of WWA by making harassing telephone calls to government officials including calling the United States Navy, Naval Region Southwest and, and the California State University system, San Diego State University as he well knew at the time of those phone calls, fraudulently claiming WWA was using the intellectual property of AG. Mrs. Firestone is known by direct observation of multiple persons to be influential on the CEO Douglas Firestone and his decisions. She has willfully

1    interfered with the operations of Aqua Genesis Ltd. and now is influencing

2    Dennis Lowery (her brother) to interfere with the business of World Wide Assets

3    LLC. This is tortuous interference on her part.

## II. The Parties

18) Ronald A. Newcomb, Minority member of Aqua Genesis Ltd. (NV), Majority Member
    of World Wide Assets LLC (owner of Autek LLC and successor to Global Trade
    Services LLC), 5514 Waring Rd., San Diego, CA 92120.

19) Douglas B. Firestone, legal residence, 344 Cascade Mist Avenue, Las Vegas, NV
    89123 but shown by Clark County Records of Parcel Number 177-21-613-029 to be
    residing at 9182 Tonya Lane, Santee, CA 92071 as an individual and as Trustee
    of the Firestone Trust.

20) Candice L.(Lowery) Firestone, last known residence, 9182 Tonya Lane, Santee,
    CA 92071, wife of Douglas Firestone and sister to Dennis Lowery

21) Denis Lowery, unknown address.

22) Aqua Genesis Ltd. is a Nevada LLC whose address is 344 Cascade Mist, Las Vegas
    NV 89123.

### First Claim for Relief

Unfair Competition

(by the Plaintiffs against all defendants)

23) The Plaintiff incorporates by reference each of the allegations in the
    preceding paragraphs of this Complaint as though fully set forth here.

24) Defendants violated California Business and Profession Section 17200 by unfair
    competition.

25) As a direct and proximate result of Defendant's unlawful conduct within the
    meaning of California Business and Profession Section 17200 Defendants have
    caused damage to Plaintiff in an amount to be proven at trial.

26) Plaintiff is informed and believes that the aforementioned acts of the
    Defendants were willful and malicious in that Defendant's acts described above
    were done with deliberate intent to injure Mr. Newcomb, ands interrupt his
    lawful business dealings at World Wide Assets LLC and improve its own business

1  and risks the minority members of AG IP rights. The Plaintiff is therefore

2  entitled to punitive damages under California Civil Code Section 3294.

3  27) The Plaintiff has suffered irreparable injury from these acts, and due to the

4  continuing threat of such injury from the behavior of the Defendants, the

5  Plaintiff is entitled to injunctive relief.

6

7  **Second Claim for Relief**

8  **Tortuous Interference with Prospective Economic Advantage**

9  (by the Plaintiffs against all defendants)

10  28) The Plaintiff incorporates by reference each of the allegations in the

11  preceding paragraphs of this Complaint as though fully set forth here.

12  29) World Wide Assets LLC has an expectancy in continuing and advantageous economic

13  relationship with the United States Navy as well as other U.S. Government

14  departments and agencies through its contacts (Denny Shaw, the CEO was the

15  Deputy Assistant Undersecretary of the Navy under the Secretary of the Navy,

16  now Senator, Jim Webb with whom he continues a close relationship and where he

17  worked with now Retired Admiral Tim La Flour, both of who attended the Meeting

18  for WWA with Rear Admiral Hering)and through its intellectual property through

19  installation, service, and support contracts. But for the defendants unlawful

20  and tortuous interference described in this complaint, there is a substantial

21  probability that the Plaintiff would have gained a contract for services to the

22  Navy and Naval Region Southwest. The Defendants collusion and conspiracy to

23  defraud the company of that contract has defamed the company, nearly stopped

24  the contract negotiations, and wrongfully damaged the company without limit.

25  The Plaintiff prays declarative relief from these acts by the defendants.

26  30) The conduct, as alleged above, constitutes violations of numerous state and

27  federal statues and codes. As a result of the Defendants' acts, the above-

28  described relationships have been disrupted, causing injury to the World Wide

29  Assets LLC and Ronald A. Newcomb personally.

30  31) As a direct and proximate result of Defendants actions, the Plaintiff has

31  suffered economic harm, including, but not limited to, loss of profits from

32

sales or licenses to current and potential customers. Defendants' wrongful conduct was a substantial factor in causing harm.

32) Unless Defendants are restrained by appropriate injunctive relief, their actions are likely to recur and will cause the Plaintiff irreparable injury for which there is no adequate remedy at law.

33) Defendants' interference with Plaintiff's prospective economic advantage with its future customer, as described above, was willful, malicious, oppressive, and in conscious disregard of Plaintiff's rights and Plaintiff is therefore entitled to an award of punitive damages to punish their wrongful conduct and deter future wrongful conduct under 15 U.S.C. § 15 (a), and resulting in lost revenues of more than $1,000,000 per month of delay, and in some cases, irreparable harm as alternative technologies are chosen.

### Third Claim for Relief

**Negligent Management of Intellectual Property Rights Minority Members**

(By Plaintiff Newcomb against Douglas Firestone)

34) The Plaintiff incorporates by reference each of the allegations in the preceding paragraphs of this Complaint as though fully set forth here

35) Douglas Firestone's negligent management, as evidenced in the complaint puts at risk, both directly and indirectly the Intellectual Property rights of the Plaintiff as minority member of Aqua Genesis LLC (NV) (30% of the membership units) and the rights of the other minority members (together, 12% excluding Firestone's 56%). He has already attempted to fraudulently, willfully and unlawfully take the Intellectual Property by the failed bankruptcy attempt, he has willfully mismanaged the LLC by refusing to accept electronic documents from the former CEO who repeatedly insisted on transferring them to him, and now he acts recklessly in his continued allowance of management by proxy by his wife and her brother. This is gross mismanagement and breach of fiduciary responsibility on his part.

36) Firestone's attorney attempted to claim rights to the business plan created by Autek and a subsidiary, GTS LLC (DE) which Firestone, again, never paid for and is dated before Aqua Genesis LLC (NV) was created. His continued insistence

1    that everything belongs to him illustrates his lack of understanding of or

2    respect for other people's rights.

3  37) Autek LLC has claim to the current Intellectual Property of Aqua Genesis and

4    prays the court to recognize those rights to work which was never compensated,

5    which seems to be the primary method of behavior of Mr. Firestone.

6  38) Firestone will claim that he is not running the LLC by himself as an alter ego

7    (he has already done this in writing), however, this claim proves the

8    interference of his wife and her brother, Mr. Lowery, and proves other points

9    in this suit.

**Fourth Claim for Relief**

**Civil Conspiracy, Aiding and Abetting**

**(by Plaintiff Against All Defendants)**

13  39) The Plaintiff incorporates by reference each of the allegations in the

14    preceding paragraphs of this Complaint as though fully set forth here

15  40) Defendants willfully, intentionally, and knowingly agreed and conspired with

16    each other to engage in the alleged wrongful conduct, including Defendants'

17    interference with the business of World Wide Assets LLC (DE) and Mr. Newcomb

18    and other unfair business practices. Defendants personally took part in those

19    wrongful torts and harmful acts.

20  41) Defendants did the acts alleged pursuant to, and in furtherance of, that

21    agreement and/or furthered the conspiracy by cooperating, encouraging,

22    ratifying, or adopting the acts of others.

23  42) Defendants also aided and abetted the described wrongful conduct of the other

24    defendants by giving substantial assistance and/or encouragement that,

25    separately considered, was wrongful in itself.

26  43) As direct and proximate result of the acts in furtherance of the conspiracy,

27    Plaintiff has suffered injury, damage, loss, harm, including, but not limited

28    to loss of profits, loss of contracts, and loss of good will from a client of

29    great magnitude and impact. The wrongful conduct committed pursuant to the

30    conspiracy was a substantial factor in causing harm.

31  44) Defendants' intentional agreement to commit, and commission of, these wrongful

32    acts was willful, malicious, oppressive, and in conscious disregard of

1    Newcomb's rights, and Plaintiff is therefore entitled to an award of punitive

2    damages to punish their wrongful conduct and deter future wrongful conduct.

3                            **Fifth Claim for Relief**

4                      **Copyright Infringement, Conversion**

5                        (by Plaintiff Against All Defendants)

6    45) The Plaintiff incorporates by reference each of the allegations in the

7        preceding paragraphs of this Complaint as though fully set forth here.

8    46) Defendants are violating the copyright of Plaintiff by using a design created

9        at the expense of Autek LLC and claim rights to those works which do not

10       rightfully belong to them. This is conversion.

11   47) Defendants continued claim to the rights of these copyrighted designs is the

12       basis for the wrongs otherwise perpetrated on Plaintiff. Plaintiff is therefore

13       entitled to injunctive relief against the Defendants and the continued claim of

14       Trade Secret.

15                           **Sixth Claim for Relief**

16                         **Negligent Misrepresentation**

17                     (by Plaintiff Against All Defendant Lowery)

18   48) The Plaintiff incorporates by reference each of the allegations in the

19       preceding paragraphs of this Complaint as though fully set forth here.

20   49) When Defendant Lowery made representations to both the Navy and to San Diego

21       State University, he had no reasonable grounds for believing them to be true

22       and/or made these representations with a reckless disregard for their truth of

23       falsity. Defendants made these representations with the intent to maliciously

24       interfere with the lawful conduct of business on the part of Plaintiff.

25   50) As a direct and proximate result of Mr. Lowery's negligent, fraudulent,

26       malicious, and oppressive misrepresentations as alleged herein, Plaintiff has

27       been damaged in sums to be proven at trial.

28                            **Prayer for Relief**

29   WHEREFORE, Plaintiff respectfully prays for the following:

30   A. For Temporary Restraining Order and a permanent injunction restraining

31       Defendants, their officers, agents, servants, employees, and attorneys, and

32       those in active concert or participation with any of them from interfering in

1   any manner with the business of Ronald A. Newcomb, including, but not limited

2   to their former tortuous interference with his World Wide Assets LLC, and in

3   his various capacities at World Wide Assets LLC, Autek LLC, or any other

4   business interests, which actions have caused and continue to cause irreparable

5   harm if not issued because the Navy and other contacts continually look for

6   alternatives and the Navy is known to be looking for an alternative to that

7   which was proposed by WWA, which, if the alternative is chosen results in

8   permanent and irreparable harm;

9   B.  For an Order directing Mrs. & Mrs. Firestone and her brother, Dennis Lowery to

10      issue a letter clearly stating that they have no claims to the intellectual

11      property of Ronald A. Newcomb (licensed to World Wide Assets LLC (DE)) to stop

12      the tortuous interference with his business, and to serve that letter on Rear

13      Admiral Hering, Naval Region Southwest, and on Plaintiff within 30 days of that

14      order;

15  C.  That the Court order the Defendants to file with the Court and serve on the

16      Plaintiff within 30 days after the service on Defendants of such injunction a

17      report in writing, under oath, setting forth in detail the manner and form in

18      which Defendants have complied with the injunction;

19  D.  For an Order directing Aqua Genesis Ltd. (NV) to stop claiming the intellectual

20      property it currently claims as this Copyrighted design in fact belongs to

21      Autek LLC (CA) who created those drawings in March and April of 2003 and were

22      never compensated for those drawings;

23  E.  That the Court declare all of the membership rights to Aqua Genesis Ltd. (NV)

24      held by Mr. Firestone and all rights stemming from them to be transferred to

25      the respective minority members of the entity by the weighted percentages of

26      their current holdings to prevent further wrongful actions by Defendants to the

27      detriment of the minority members;

28  F.  That the Court order restitution for damages from Defendants for lost income

29      over the time delays in achieving the contract with the Navy for the

30      desalination plant, said income estimated to be $1,000,000 per month of delay,

31      but damages will be proved at trial;

32

G. That the Court order Defendants to pay Plaintiff through any combination of cash, or real property, or personal property agreeable to Plaintiff, punitive damages in a sum to be determined at trial, on the basis of their willful and deliberate tortuous interference with the business of Ronald A. Newcomb, conspiracy to defraud, and aiding and abetting in that fraud;

H. For an Order awarding Plaintiff such other and further relief as the Court deems just and proper.

Dated this 30th day of June 2007
Respectfully submitted:

Ronald A. Newcomb
5514 Waring Rd,
San Diego CA 92120-1952

COMPLAINT - 20

*JS 44   (Rev. 12/07)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet.   (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.)

## I. (a) PLAINTIFFS

## DEFENDANTS

FILED

**(b)** County of Residence of First Listed Plaintiff *SAN DIEGO CAL*
(EXCEPT IN U.S. PLAINTIFF CASES)

County of Residence of First Listed Defendant *SAN DIEGO CAL*
(IN U.S. PLAINTIFF CASES ONLY)

NOTE:   IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE
LAND INVOLVED.

SOUTHERN DISTRICT OF CALIF.

**(c)** Attorney's (Firm Name, Address, and Telephone Number)

Attorneys (If Known)

**'08 CV 1161 H POR** KVB
DEPUTY

## II. BASIS OF JURISDICTION   (Place an "X" in One Box Only)

- ☐ 1   U.S. Government Plaintiff
- ☐ 3   Federal Question (U.S. Government Not a Party)
- ☐ 2   U.S. Government Defendant
- ☒ 4   Diversity (Indicate Citizenship of Parties in Item III)

## III. CITIZENSHIP OF PRINCIPAL PARTIES (Place an "X" in One Box for Plaintiff
(For Diversity Cases Only)   and One Box for Defendant)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☒ 1 | ☐ 1 | Incorporated or Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☒ 2 | Incorporated and Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT   (Place an "X" in One Box Only)

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 610 Agriculture | ☐ 422 Appeal 28 USC 158 | ☐ 400 State Reapportionment |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 362 Personal Injury - | ☐ 620 Other Food & Drug | ☐ 423 Withdrawal | ☐ 410 Antitrust |
| ☐ 130 Miller Act | ☐ 315 Airplane Product | Med. Malpractice | ☐ 625 Drug Related Seizure | 28 USC 157 | ☐ 430 Banks and Banking |
| ☐ 140 Negotiable Instrument | Liability | ☐ 365 Personal Injury - | of Property 21 USC 881 | | ☐ 450 Commerce |
| ☐ 150 Recovery of Overpayment | ☐ 320 Assault, Libel & | Product Liability | ☐ 630 Liquor Laws | **PROPERTY RIGHTS** | ☐ 460 Deportation |
| & Enforcement of Judgment | Slander | ☐ 368 Asbestos Personal | ☐ 640 R.R. & Truck | ☐ 820 Copyrights | ☐ 470 Racketeer Influenced and |
| ☐ 151 Medicare Act | ☐ 330 Federal Employers' | Injury Product | ☐ 650 Airline Regs. | ☒ 830 Patent | Corrupt Organizations |
| ☐ 152 Recovery of Defaulted | Liability | Liability | ☐ 660 Occupational | ☐ 840 Trademark | ☐ 480 Consumer Credit |
| Student Loans | ☐ 340 Marine | **PERSONAL PROPERTY** | Safety/Health | | ☐ 490 Cable/Sat TV |
| (Excl. Veterans) | ☐ 345 Marine Product | ☐ 370 Other Fraud | ☐ 690 Other | | ☐ 810 Selective Service |
| ☐ 153 Recovery of Overpayment | Liability | ☐ 371 Truth in Lending | **LABOR** | **SOCIAL SECURITY** | ☐ 850 Securities/Commodities/ |
| of Veteran's Benefits | ☐ 350 Motor Vehicle | ☐ 380 Other Personal | ☐ 710 Fair Labor Standards | ☐ 861 HIA (1395ff) | Exchange |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle | Property Damage | Act | ☐ 862 Black Lung (923) | ☐ 875 Customer Challenge |
| ☐ 190 Other Contract | Product Liability | ☐ 385 Property Damage | ☐ 720 Labor/Mgmt. Relations | ☐ 863 DIWC/DIWW (405(g)) | 12 USC 3410 |
| ☐ 195 Contract Product Liability | ☐ 360 Other Personal | Product Liability | ☐ 730 Labor/Mgmt.Reporting | ☐ 864 SSID Title XVI | ☐ 890 Other Statutory Actions |
| ☐ 196 Franchise | Injury | | & Disclosure Act | ☐ 865 RSI (405(g)) | ☐ 891 Agricultural Acts |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | ☐ 740 Railway Labor Act | **FEDERAL TAX SUITS** | ☐ 892 Economic Stabilization Act |
| ☐ 210 Land Condemnation | ☐ 441 Voting | ☐ 510 Motions to Vacate | ☐ 790 Other Labor Litigation | ☐ 870 Taxes (U.S. Plaintiff | ☐ 893 Environmental Matters |
| ☐ 220 Foreclosure | ☐ 442 Employment | Sentence | ☐ 791 Empl. Ret. Inc. | or Defendant) | ☐ 894 Energy Allocation Act |
| ☐ 230 Rent Lease & Ejectment | ☐ 443 Housing/ | **Habeas Corpus:** | Security Act | ☐ 871 IRS—Third Party | ☐ 895 Freedom of Information |
| ☐ 240 Torts to Land | Accommodations | ☐ 530 General | | 26 USC 7609 | Act |
| ☐ 245 Tort Product Liability | ☐ 444 Welfare | ☐ 535 Death Penalty | **IMMIGRATION** | | ☐ 900Appeal of Fee Determination |
| ☐ 290 All Other Real Property | ☐ 445 Amer. w/Disabilities - | ☐ 540 Mandamus & Other | ☐ 462 Naturalization Application | | Under Equal Access |
| | Employment | ☐ 550 Civil Rights | ☐ 463 Habeas Corpus - | | to Justice |
| | ☐ 446 Amer. w/Disabilities - | ☐ 555 Prison Condition | Alien Detainee | | ☐ 950 Constitutionality of |
| | Other | | ☐ 465 Other Immigration | | State Statutes |
| | ☐ 440 Other Civil Rights | | Actions | | |

## V. ORIGIN   (Place an "X" in One Box Only)

- ☒ 1   Original Proceeding
- ☐ 2   Removed from State Court
- ☐ 3   Remanded from Appellate Court
- ☐ 4   Reinstated or Reopened
- ☐ 5   Transferred from another district (specify)
- ☐ 6   Multidistrict Litigation
- ☐ 7   Appeal to District Judge from Magistrate Judgment

## VI. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing (Do not cite jurisdictional statutes unless diversity):
*RESTATEMENT OF TORTS          UNFAIR COMPETITION §39*   (15 USC §15(A))

Brief description of cause:
*TORTIOUS INTERFERENCE, OFFENSIVE RIGHT, COPYRIGHT INFRING, CONVERSION*

## VII. REQUESTED IN COMPLAINT:

☐ CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23

DEMAND $

CHECK YES only if demanded in complaint:
JURY DEMAND:   ☐ Yes   ☒ No

## VIII. RELATED CASE(S) IF ANY

(See instructions):   JUDGE                DOCKET NUMBER

DATE
*JUNE 30, 2007*

SIGNATURE OF ATTORNEY OF RECORD
*PRO SE*

FOR OFFICE USE ONLY

RECEIPT #  152122   AMOUNT  $350   APPLYING IFP            JUDGE            MAG. JUDGE

TAC   6/30/08

**UNITED STATES
DISTRICT COURT**
SOUTHERN DISTRICT OF CALIFORNIA
SAN DIEGO DIVISION

# 152422     — TC

June 30, 2008
15:08:48

Civ Fil Non-Pris
USAO #.: 08CV1161
Judge..: MARILYN L HUFF
Amount.:
Check#.: PC3508              $350.00 CK

Total—> $350.00

FROM: 08CV1161 H POR